IN THE COMMON PLEAS COURT OF CLEARFIELD COUNTY
PENNSYLVANIA

FILED
AUG 16 2021
CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

Purcell Bronson,
Plaintiff

Civil Action - Law Jury Trial Demanded , Docket No. 3:21-cv-127

V.

T. Vaughn; B. Smith; Mr. Nunez; C. Miller; Sgt. Patterson;Sgt. Owens; Deputy Ivicic; Lt. Oliver; Ms. Ginter; Capt. Mooney;Mr. Marsh ; Ms. Civiello; D.J. Close; J. Barrows; Mr. James; Lt. Farbaugh; Capt. Jones; Co. Ridder; Mr. E. Dyche; S. Hnatkovich; In Their Official and Private Capacity, Defendants.

## AMENDED COMPLAINT

1. Plaintiff hereby invokes this court's original jurisdiction and its concomitant jurisdiction to hear federal $1983 claims, against the herein defendants for the violation of plaintiff's state and federal constitutional rights.

2. Plaintiff is a state prisoner confined at the state correctional institution at Houtzdale, Pa. 16698 and was so confined at the times of the incidents mentioned herein.

3. Defendants are prison employees employed at the state correction institution at Houtzdale, Pa. and at Central Office 1920 Technology Parkway, Mechc anicsburg, Pa.

## Claim-A

4. On or about April 20, 2021 defendants Oliver, Vaughn, and Ivicic entered into a conspiracy to retaliate against the plaintiff for assisting prisoner Bolds obtain kitchen employment. Defendant Oliver placed plaintiff under Administrative Custody status in the Restricted Housing Unit (RHU), on the allegation of defendat Vaughn that plaintiff had forged her signatu re on prisoner Barry Bolds Request Slip to her a Request Slip plaintiff never possessed.

5. Defendant Ivicic also alleged that plaintiff forged her signature on Bolds Request Slip to her.

6. T he transfering of plaintiff to the RHU was an arbitrary one, as no "need for increased control" existed, justifying the transfer. The investigation could have easily procceded while plain-was housed in his general population cell.

7. Defendant Vaughn lied about her signature being forged as she knew plaintiff had no access to the request slip in question which was sent to her by Bolds, and in Bolds handwriting. Bolds housed on one side of the prison and plaintiff on the other side of the prison and separated by fenses.

8. Defendant Vaughn's signature is the same signature on numerous Request Slips possesed by plaintiff and Bolds sent to them by defendant, and as set forth on numerous other kitchen workers' Request Slips from her to them.

9. Defendant Vaughn's false allegation was made with the intent to stop Bolds from obtaining his PM kitchen employment that defendant was obstructing Bolds from obtaining.

10. The purpose of defendnnt's lie, was to obstruct Bolds from return to the PM kitchen shift, whereat he would be reunited with plaintiff, and her lie would would allow defendant to send Bolds to the AM shift, with no need to worry about the PM Request Slip's statement "you are on the list" being used against her, thus her false allegation that plaintiff forged the Request.

11. Plaintiff had submitted a Request Slip to defendant Vaughn, for Bolds, exposing defendant's scheme to obstruct Bolds' PM kitchen employment, whereon plaintiff wondered why she stated on her request slip th at plaintiff had attached to his, that she would state "you are on the list" but if true, why was it taking so long to move him to the PM kitchen block, thus showing that she was obstructing Bolds employment.

12. Defendant Ivicic admitted Bolds would be moved "when space is available" but she to in an attempt to cover up the mistreatment of Bolds, falsely alleged that plaintiff forged her signature on her Request Slip to Bolds.

13. After an inquiry from an outside source as to the delay in moving Bolds to F/A kitchen block, did defendant Vaughn state to the source that the Request Slip from her to Bolds, stating that Bolds was on the PM waiting list containing her signature had a forged signature on it.

14. Defendant Vaughn then used that excuse to move Bolds to the AM kitchen block, with her intent to cover up her "on the list" ststement, retailate against plaintiff for questioning her actions, and to

separate plaintiff from Bolds.

15. Defendant Vaughn act of moving Bolds to the AM kitchen block shows up her maliciousness, and retailiatory intent when she knew Bolds had signed up for the PM shift. Her intent was to get back at the plaintiff.

16. Bolds refused the AM shift move, as he was aware of the scheme of separation and deceit, that was transpiring.

17. When Bolds refused the AM shift assignment, defendant Vaughn retaliated ag ainst the plaintiff and sicced defendant Oliver on the plaintiff, to cover up the scheme of mistreatment, and nullify the truth of her statement that Bolds was on the PM waiting "list." She lied to defendant Oliver that he signature was forged by plaintiff, with her intent being to nullify that piece of evidence of what the original assignment was for Bolds.

18. A Handwriting Expert will testify in this matter, that the numerous Request Slips possessed by plaintiff belonging to him, Bolds, and other kinchen wor5kers, containing defendant Vaughn's signatures, were written by the same person, who wrote the allegedly forged one, i.e., defendant Vaughn.

19. Further, due to defendant Oliver's jealousy of plaintiff's and Bolds' relationship, defendant refused to make a handwriting comparison, which would have exonerated plaintiff, and used that opportunity to sabotage plaintiff relationship with Bolds, by stating that Bolds snitched on plaintiff, allowing defendant intimate access to Bolds without opposition from plaintiff, as plaintiff would be in the RHU.

20. Defendant Vaughn and Ivicic acts and actions violated the DOC's Code of Ethics.

21. As a result of defendants Vaughn and Ivicic's lie, plaintiff was made to suffer deprivation of his state rights and privileges, and punished with solitary segregation in the RHU.

22. As a result of defendant Vaughn's lie, plaintiff's cell property was packed up for transfer to the RHU, and was vandalized by defendants Patterson and Owens, in that they destroyed family pictures, legal files, and files taken out of their cereal bags and vinyl envelopes and dumped back into the boxes all scramble up and mixed up, ripped and crumble up. No packing slip was process as re-

quired by DOC Policy.. Their intent was to cover up their acts and actions of vandalization. Defendants futher intent was to obstruct plaintiff's proposed civil suits filings against SCI-Houtzdale employees, and cause the statute of limitations to expire. When plaintiff sought his copy off the packing slip, defendant Miller and Smith, joined in Patterson and Owens conspiracy and covered up and concealled the Policy violation of the missing packing slip, by refusing to address the issue, but stating after their grievance decision that they did so in their decision, when nowhere in their decision is it found that addressing, further showing up their cover-up. Defendants continued their cover-up by stating that the cereal bags containing plaintiff's legal files were contraband, and thats why they were seized, but yet no confiscation receipt was issued for contraband, and cereal bags are not listed as contraband under the definition of contraband in the DOC;s Inmate Handbook.

23. The herein events would not have occured but for defendants Vaughn and Ivicic's lies.

24. Defendant Oliver acted with deliberate indifference in refusing to make a handwriting comparisone of plaintiff's, Vaughn, and Ivicic's handwriting, before locking plaintiff up based on hearsay. Had he not acted with reckless disregard to plaintiff's rights and made the comparisone, it would have been readily apparent that the signatures and the writing on the Rerquest Slips were those of defendants Vaughn and Ivicic.

25. Defendant Nunez was grossly incompetent due to his lack of training in the law as to prisoner rights. His finding of guilt on the alleged charges was arbitrary as there was no evidence presented in the said Report substantiating the Report's charges.

26. Plaintiff plead guilty to the fact of writing his Request Slip and puting it in the mail box where it was supposed to go, but not to the charges, but defendant refused to accept the difference and badged plaintiff into agreeing that he possessed the Request slip and put it in the mail box but the acts were not unlawful in and of themself. Defendant stated that if plaintiff continued to argue with him, he would give plaintiff more time. Plaintiff made no statements, as alledged, and signed off on no documents.

27. Defendant knew that there was no evidence in the body of the Report substantiating the charges and that the Report consisted of hearsay, yet ignored this evidence that would have required the Report to be dismissed prior to plaintiff's plea.

28. Had defendant Nunez been propertly trained in the law, plaintiff would not have suffered the arbitrary confinement to the RHU.

29. Defendant Nunez further refused to order a handwriting comparison be done on the alleged forged signature. Had he or defendant Oliver done so as asked by the plaintiff, the jig would have been up, and defendant Vaughn and Ivicic proven liers.

30. Plaintiff had the right to provide mutual legal assistance to prisoner Bolds, who was an unlearnt prisoner, and who had asked for assistance of composing and writing of his request slip. Defendant Nunez stated that it was a violation of prison Rules to help another prison, even if he was a jailhouse lawyer.

31. Defendant Nunez refused to allow plaintiff to review any of the alleged fored documents, or any documents that were the basis of the Report, as required by law.

32. Defendant Nunez knew that under the Inmate Handbook's definition of contraband, a Request Slip is not listed as contraband. nor is it a violation of the Rule Book to put a Request Slip in the mail box, where Request Slips are supposed to be put.

33. Defendants did engage in a conspiracy to retaliate, harass, mistreat plaintiff for helping prisoner Bolds to rightfully obtain his kitchen employment. This scheme began by all defendants lying that plaintiff forged their signatures on Bolds' Request Slips, when they knew thay were lying, but for this lie, said Report would not have been written.

34. Defendants acted intentionally, with malice and forethought, deliberate indifference, and reckless disregard to plaintiff's constitutional rights.

35. As a result of defendants' lies, plaintiff was made to suffer 30 days of disciplinary confinement in the RHU, and lost of privileges thereafter for 30 days. And he suffered emotional and mental injuries.

36. As a result of defendants acts and actions, plaintiff was deprived of his rights protected by the 1st, 8th, and 14th amendments to the USA Constitution.

37. As a result of defendants acts and actions, plaintiff was deprived of his rights as protected by state laws.

38. Plaintiff seeks a declaratory judgment declaring defendants acts and actions 1)unlawful 2) inviolation of the DOC's Code of Ethics, 3) arbitrary, 4) discriminatory, 5) retaliatory, 6) malicious, 7) reckless, and 8) intentional.

39. Plaintiff seeks the award of compensatory damages in the amount of $150,000 dollars, and punitive damages in the amount of $1,000,000 dollars, against each and every defendant.

40. Plaintiff seeks the award of expenses, costs, attorney fees, and any other relief the court deems proper and just.

## Claim-B

41. On or about 3/16/21 SCI-Houtzdale staff and central officials made an arbitrary and discriminatory decision not to remove plaintiff's adverse classification Codes Z and H, which decision were not in compliance with Department of Corrections Policies.

42. Defendants decision felled to set forth any rational reason for their decision within the parameters of the policies.

43. Plaintiff's current classification codes Z & H restrict him from double celling with another prisoner, and requires him to change cells every 90 days.

43. Said code Policy Z, 6.5.3 allows the code to be removed if plaintiff can demonstrate through a period of stable institutional behavior (of at least six months duration) that he is no longer a threat to a cell partner and that the code is no longer needed.

44. Plaintiff did demonstrate th e policy requirement to the defendants, who refused to acknowledge this evidence and ignored same in rendering th eir arbitrary and discriminary decision not to remove the codes.

45. Defendants failed to present any evidence that plaintiff's "stable behavior" did not meet the standart for removal of the codes, that the codes were still "needed," or that plaintiff still posed a "threat." The two codes if they were applicable in the past, were no longer valid.

46. Defendants agreed that plaintiff met the policy requirements for removal of his codes, but that they were :following the Other Report #768326 issued by SCI-Huntingdon referencing the trial court judge's opinion in plaintiff's 1995 criminal case," to keep him so housed.

47. Defendants knew that a 25 year old opinion of a bias judge was in and of itself, stale reason for their decision, and coming from the Judicial branch of the government carried no authority over the operation of the Executive branch of the government, as to how to treat prisoners.

48. Defendants further intent with their decision was to obstruct plaintiff's promotion to a lesser custody status level, which would gain plaintiff more privileges, benefits, and access to programs beneficials to his commutation application. They do not want to see plaintiff freed.

49. Defendants anomosity for plaintiff's legal and activist activities, against the DOC, is another cause of defendants' refusal to properly apply the DOC policies to plaintiff's case.

50. Defendants' refusal to remove plaintiff's codes was a discriminatory one as other similarly situated Life sentenced prisoners are not being adversely treated and have had their Z codes removed and plaintiff is similarly situated.

51. Defendants are well aware that 3,889 Life sentenced prisoners have been allowed to double cell, and 645 of these lifers plaintiff is similarly situated to, have had prior misconducts for assualt, murder, rape aggravated assault, voluntary manslaughter, or IDSI.

52. Plaintiff has never assaulted any of numerous cell partners.

53. Further , plaintiff's proposed cell partner has signed a verification relieving defendants of any liability surrounding his celling with plaintiff, and defendants have refused this document.

54. Plaintiff is alleging that he has been intentionally treated differently from other similarly situated Life sentenced prisoners in general, and in specific the 217 Lifers at SCI-Houtzdale who have had their Z-Code removed and allowed to double cell, and there is no rational reason for the difference in treatment.

55. No evidence was presented by defendants justifying the retention of plaintiff's H-Code. They failed to set forth the DOC prison that plaintiff escape from or attempted to escape from, thus meeting the H-Code requirement as an escape risk.

56. As a result of defendants arbitrary H-Code assignment, plaintiff is made to suffer unnecessary arthritic pain due to having to move heavy personal property every 90 days from cell to cell, when the readily available alternative of defendants checking plaintiff's cell for any escape attempts would protect the prison's preceived security interest IF plaintiff had an escape record. Yet defendants refuse to employ this alternative with their intent to hasass plaintiff.

57. Defendants H-Code policy as applied to plaintiff constitute an exaggerated response, thus serves no important penological interest that cannot be protected by the less disruptive method of a cell search.

58. Defendant have acted with deliberate indifference to plainttiff's constitutional rights, intentionally, and with reckless didregard to plaintiff's right to be free from discrimination.

59. As a result of defendants' acts, actions, practices, and policies, plaintiff was deprived of his rights protected by the 14th amendment to the USA Constitution and the states's constitution and laws.

60. Plaintiff seeks a declaratory judgment declaring defendants acts, actions, practices, and policies 1) UNLAWFUL, 2) personal, 3) malicious, 4) arbitrary, and 5) discriminatory.

61. Plaintiff seeks a preliminary and permanent injunction injunction which require defendants to 1) rescind plaintiff's Z and H Codes, 2) return plaintiff to his custody level III, and 3) allow him to double cell with a compatable prieoner of his choosing.

62. Plaintiff seeks compensatory damages of $500,000. dollars and punitive damages of $1,000,000. dollars against each and every defendant.

63. Plaintiff seeks the award of expenses, costs, attorney fees and any other relief the court deems proper and just.

Claim-C

64. On Friday May 28, 2021, plaintiff was released from the Restricted Housing Unit (RHU) and was given his personal property that was being held in said unit.

65. Upon inspection of his property, plaintiff found two (2) boxes of food items unaccounted for. When plaintiff asked the numerous guards standing around the whereabouts of his food boxes, he was told that "we ate some, and destroyed the rest."

66. At the inventory of plaintiff's property on 4/22/21, plaintiff brought to defendants attention that DOC Policy 6.5.1 mandated that the RHU store his property until he is released from the RHU, and that he was going to file a grievance concerning defendants intent to destroy his property, and per Policy DC-ADM 804, they were also mandated to hold said property untill the outcome of final review resolution

67. Defendant Farbaugh and Jones stated that they would adhere to and follow DOC Policies concerning plaintiff's property, but lied, as they summarily destroyed plaintiff's property for no important penological reason.

68. Defendants Dyche and Hnatkovich subsequently covered up defendants acts by sweeping the incident under the rug, when they refused to address and resolve the DOC Policy violations presented via grievance proceedings.

69. Defendants acted with reckless disregard to plaintiff's property rights, were deliberately indifferent, acted intentionally, in bad faith, and with malicious intent.

70. Defendants acts were in retaliation against plaintiff for his misconduct Report #D504151 concerning his acts against staff as fraudulently alleged by defendant Oliver.

71. As a result of defendants acts and actions plaintiff was deprived of his rights as protected by the 1st and 14th amendments to the USA Constitution, and State laws.

72. Plaintiff seeks a declaratory judgment declaring defendants' acts and actions unlawful.

73. Plaintiff seeks a preliminary and permanent injunction which requires defendants to a) return and replace plaintiff's exact property items lost, stolen, destroyed, or eaten.

75. Plaintiff seeks the award of compensatory damages in the of $500,000. dollars and punitive damages in the amount of $1,000,000. dollars against each and every defendant.

76. Plaintiff seeks the award of expenses, costs, attorney fees and any other relief the court deems proper and just.

Respectfully submitted,

Purcell Bronson, Pro se.

**VERIFICATION**

I hereby verify that the statement made in the foregoing pleadings are true and correct to the best of my knowledge, information, and belief. I understand that false statements made herein are subject to the penalties of 18 Pa.C.S.A. §4904, relating to unsworn falsification to authorities.

EXXXXXXXXXXXXXXXXXXXXXXXX

BY: [signature]

Dated: 8 / 5 / 21

**CERTIFICATE OF SERVICE**

XXMMMM

I hereby certify that I caused the foregoing pleading to be served upon the below parties this 5th day of aug 2021, by depositing a copy of same in the prison mail box first class mail postage paid addressed to:

T. Vaughn; B. Smith; Mr. Nunez; C. Miller; Sgt. Patterson; Sgt. Owens; Deputy Ivicic; Lt Oliver; Ms. Ginter; Capt. Mooney; Mr. Marsh; Ms. Civiello; D.J. Close; J. Barrows; Mr. James; Lt. Farbaugh; Capt. James; Co. Ridder; Mr. E. Dyche; S. Hnatkovich; In Their Official and Private Capacity.

Office of the Attorney General
Litigation Section
1521 Waterfront Place
Mezzanine Level
Pitts., Pa. 15222

Purcell Bronson